**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALBERT GARDNER,                     :
                                              Civil Action No. 08-6127 (RMB)
          Petitioner,     :

          v.              :         **OPINION**

J. GRANDOLSKY, Warden,    :

          Respondent.     :


**APPEARANCES:**

Petitioner pro se
Albert Gardner
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640


**BUMB**, District Judge

       Petitioner Albert Gardner, a prisoner currently confined at

the Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

_____

       [1] Section 2241 provides in relevant part:

       (a) Writs of habeas corpus may be granted by the
       Supreme Court, any justice thereof, the district courts
       and any circuit judge within their respective
       jurisdictions.
       (c) The writ of habeas corpus shall not extend to a
       prisoner unless-- ... (3) He is in custody in violation
       of the Constitution or laws or treaties of the United
       States ... .

Because it appears from a review of the Petition that
Petitioner is not entitled to issuance of the writ, the Court
will deny the Petition.  <u>See</u> 28 U.S.C. § 2243.

I.  <u>BACKGROUND</u>

Petitioner was convicted, pursuant to a guilty plea, in the
U.S. District Court for the District of Minnesota of possession
with intent to distribute cocaine hydrochloride, in violation of
21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  <u>See</u> <u>United States v.
Gardner</u>, Criminal Action No. 06-0213 (D. Minn.).  In January
2007, Petitioner was sentenced to a term of imprisonment of 30
months, and to a consecutive 27-month sentence for violation of a
previously-imposed term of supervised release, all to be followed
by a three-year term of supervised release.  In connection with
that sentence, the trial court imposed a two-level enhancement
for possession of a dangerous weapon, pursuant to U.S.S.G.
§ 2D1.1(b)(1).  In addition, the judgment contained a
recommendation that Petitioner be permitted to participate in the
500-hour Residential Drug Abuse Treatment Program, if eligible.

Petitioner has been accepted into the Federal Bureau of
Prisons' Residential Drug Abuse Treatment Program.  However,
Petitioner has been advised that, even upon successful completion
of the program, he will not be eligible for early release, based
upon the discretion of the Director of the Bureau, as reflected
in Bureau regulations and Program Statements, to deny eligibility

2

for early release to prisoners whose current offense is a felony which involved the carrying, possession, or use of a firearm or other dangerous weapon.[2]

It appears that Petitioner has exhausted his administrative remedies to challenge this decision.  Here, he asserts that the regulation pursuant to which he has been denied eligibility for early release was promulgated in violation of the Administrative Procedure Act, in that it is "arbitrary and capricious" because the Bureau has failed to articulate a rationale for its regulation.[3]  He asks that this Court hold the regulation invalid.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429

----

[2] According to the Bureau's Inmate Locator, Petitioner's anticipated release date is July 23, 2010.

[3] Petitioner does not argue that his offense does not fall within the terms of the regulation or that the regulation otherwise has been applied to him incorrectly.

3

U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.   See Royce
v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.
Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399
U.S. 912 (1970).   Nevertheless, a federal district court can
dismiss a habeas corpus petition if it appears from the face of
the petition that the petitioner is not entitled to relief.   See
Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773
F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).
See also 28 U.S.C. §§ 2243, 2255.

     III.   THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM

     In 1990, Congress required the Bureau of Prisons to "make
available appropriate substance abuse treatment for each prisoner
the Bureau determines has a treatable condition of substance
addition or abuse."   Crime Control Act of 1990, Pub.L. 101-647,
§ 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C.
§ 3621(b)).   In 1994, Congress amended the statute to provide an
incentive for prisoner participation.   The incentive provision
reads:

> The period a prisoner convicted of a nonviolent offense
> remains in custody after successfully completing a
> treatment program may be reduced by the Bureau of
> Prisons, but such reduction may not be more than one
> year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later.  Congress did not define, by statute, the term "nonviolent offense."  By regulation and Program Statement, the Bureau determined to rely upon the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3).  Thus, the Bureau considered ineligible for early release those offenders convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  See 28 C.F.R. § 550.58 (1995); 60 Fed.Reg. 27,692, at 27,695; BOP Program Statement No. 5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various Courts of Appeals reached differing conclusions on the question of whether the Bureau had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses.  See generally Lopez v. Davis, 531 U.S. 230, 234-35 (2001).

5

In light of the split among the Circuits, the Bureau
promulgated an interim regulation on October 15, 1997, and made
the regulation effective approximately one week prior, on October
9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg.
53,690.  The 1997 interim regulation, like the one it superceded,
made ineligible for the early release incentive those prisoners
incarcerated for an offense that involved the possession, use, or
carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997).
The 1997 interim regulation differs from the 1995 regulation by
relying on "the discretion allotted to the Director of the Bureau
of Prisons in granting a sentence reduction to exclude
[enumerated categories of] inmates," 62 Fed.Reg. at 53,690,
rather than purporting to define the statutory terms "prisoner
convicted of a nonviolent offense" or "crime of violence."

In <u>Lopez v. Davis</u>, the Supreme Court held that the 1997
interim regulation's categorical exclusion of prisoners based on
their involvement with firearms in connection with the commission
of a felony was a permissible exercise of the Bureau's
discretion.

> According to the Bureau, Congress simply "did not
> address how the Bureau should exercise its discretion
> within the class of inmates who satisfy the statutory
> prerequisites for early release."  Because Congress
> left the question unaddressed, the Bureau maintains,
> the agency may exclude inmates either categorically or
> on a case-by-case basis, subject of course to its
> obligation to interpret the statute reasonably, see
> <u>Chevron</u>, 467 U.S., at 844, 104 S.Ct. 2778, in a manner
> that is not arbitrary or capricious, see 5 U.S.C.

§ 706(2)(A).  In this instance, the Bureau urges, it
has acted reasonably: Its denial of early release to
all inmates who possessed a firearm in connection with
their current offense rationally reflects the view that
such inmates displayed a readiness to endanger
another's life; accordingly, in the interest of public
safety, they should not be released months in advance
of completing their sentences.

We agree with the Bureau's position. ...

... [W]e further hold that the regulation
excluding Lopez is permissible.  The Bureau reasonably
concluded that an inmate's prior involvement with
firearms, in connection with the commission of a
felony, suggests his readiness to resort to life-
endangering violence and therefore appropriately
determines the early release decision.

Lopez, 532 U.S. at 239-40, 244 (citation and footnotes omitted).

The Court declined to consider the arguments of various amici

that the 1997 interim regulation violated the notice-and-comment

provisions of the APA, as that argument had not been raised or

decided below, or presented in the petition for certiorari.  531

U.S. 230, 244 n.6.

The commentary accompanying publication of the 1997 interim

regulation recited the history surrounding the Bureau's previous

attempts to regulate in this area, including the 1995 interim

regulation, which attempted to define the term "crime of

violence," and the subsequent split of authority among the

federal courts regarding that regulatory definition.  The

commentary further noted that the Bureau was "publishing this

change as an interim rule in order to solicit public comment

while continuing to provide consideration for early release to

qualified inmates." 62 Fed.Reg. at 53,690. Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation. The commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.

Three years later, on December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change. See 65 Fed.Reg. 80,745. The final regulation was effective as of December 22, 2000. Id. The commentary accompanying the final regulation noted that the Bureau had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical. Id. at 80,747. Thus, the final regulation read, in pertinent part, as follows:

Consideration for early release.

An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

(a) Additional early release criteria.

8

(1) As an exercise of the discretion vested
in the Director of the Federal Bureau of Prisons, the
following categories of inmates are not eligible for
early release:

...

(vi) Inmates whose current offense is a
felony:

...

(B) That involved the carrying,
possession, or use of a firearm or other dangerous
weapon or explosives (including any explosive material
or explosive device), ...

5 U.S.C. § 550.58 (2000).  The regulation has remained unchanged

since 2000.

The Administrative Procedure Act ("APA") requires, with

exceptions not relevant here, that proposed rules be published in

the Federal Register, not less than 30 days before the proposed

rule's effective date, and provide a period for interested

persons to comment on the proposed rule, which comments are to be

considered by the agency prior to adopting the rule.  See 5

U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the

United States Court of Appeals for the Ninth Circuit determined

that the 1997 interim regulation was invalid, for failure to

follow the notice-and-comment requirements of the APA.  See,

Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final

rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale for its categorical exclusion rule. <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008).

In <u>Arrington</u>, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical <u>exclusion</u> rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by categorically <u>including</u> prisoners with non-violent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically <u>excluding</u> such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

<u>Arrington</u>, 516 F.3d at 1114 (emphasis in original) (citation omitted). The Ninth Circuit refused to consider the offered

10

rationale that offenders with convictions involving firearms pose
an increased risk to the public.  The public safety rationale,
the Ninth Circuit concluded, was not stated in the record and was
merely a post hoc rationalization.

It is upon the <u>Arrington</u> decision that Petitioner relies
here.

IV.  <u>ANALYSIS</u>

Petitioner contends, pursuant to the <u>Arrington</u> decision,
that the 2000 final rule violates the APA proscription against
arbitrary and capricious agency action.  Thus, Petitioner
contends that his categorical exclusion from consideration for
early release, pursuant to the 2000 final rule, was unlawful.

This Court disagrees with Petitioner's position and with the
<u>Arrington</u> decision.

The APA's "arbitrary and capricious" standard of review is
"narrow."  A federal court may "find that an action is arbitrary
and capricious if the agency relied on facts other than those
intended by Congress, did not consider 'an important aspect' of
the issue confronting the agency, provided an explanation for its
decision which 'runs counter to the evidence before the agency,'
or is entirely implausible."  <u>Rite Aid of Pennsylvania, Inc. v.
Houstoun</u>, 171 F.3d 842, 853 (3d Cir. 1999) (quoting <u>Motor Vehicle
Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463
U.S. 29, 43-44 (1983)).  Moreover, a federal court "must 'uphold

11

[an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" <u>Rite Aid</u>, 171 F.3d at 853 (quoting <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43) (internal citations omitted).   Indeed, "on occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered <u>obvious and unmistakable</u>." <u>Citizens to Save Spencer County v. U.S. Environmental Protection Agency</u>, 600 F.2d 844, 884 (D.C. Cir. 1979) (emphasis added) (quoted with approval in <u>Muolo v. Quintana</u>, 2009 WL 82491 (W.D. Pa. Jan. 8, 2009)).

Virtually every court to consider the matter has rejected the rationale of <u>Arrington</u>.   <u>See</u> <u>Snipe v. Dept. of Justice</u>, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008) (collecting cases).   The Court of Appeals for the Sixth Circuit has held that the <u>Lopez</u>[4] decision "does directly control" the argument that this challenged regulation is arbitrary.   <u>See</u> <u>Harrison v. Lamanna</u>, 19 Fed.Appx. 342, 2001 WL 1136080 (6th Cir. 2001).   <u>See also</u>

---

[4] As noted above, in <u>Lopez v. Davis</u>, 531 U.S. 230, 240 (2001), the Supreme Court agreed with the Bureau of Prisons' argument that "the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see <u>Chevron[ v. Natural Resources Defense Council</u>, 467 U.S. 837, 884 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A)."   The Court went on, "Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the [1997 interim regulation] is permissible.   The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision."   531 U.S. at 244 (footnote omitted).

<u>Cushenberry v. Federal Medical Center</u>, 530 F.Supp.2d 908, 913 (E.D. Ky. 2008) (same); <u>Robinson v. Gonzaales</u>, 493 F.Supp.2d 758, 763-64 (D. Md. 2007) (same); <u>Chevrier v. Marberry</u>, 2006 WL 3759909, *4-5 (E.D. Mich. 2006) ("There is nothing unreasonable in the BOP's common-sense decision that there is a significant potential for violence from criminals who possess firearms."). This Court agrees that the <u>Lopez</u> decision directly controls the conclusion that this challenged regulation, which is identical to the 1997 interim regulation at issue in <u>Lopez</u>, is not "arbitrary and capricious" in violation of the APA.

To the extent <u>Lopez</u> does not directly control the issue, this Court agrees with Chief Magistrate Judge Baxter, of the Western District of Pennsylvania, "that the Bureau chose the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) because of the increased risk that felons with convictions involving firearms might pose to the public can be reasonably discerned from the administrative record."  <u>Muolo</u>, 2009 WL 82491, *9.

> It is a point that is evident from review of the litigation to which the Bureau referred in the Federal Register.  The program statement at the center of that litigation explained that the Bureau originally chose to categorically exclude inmates convicted of drug offense violations who received sentence enhancements for possession of a weapon because the "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property."  PS 5162.02, § 9.  Also, the legal decisions issued by the courts of appeals in that litigation showed that the Bureau sought to

13

> categorically exclude from the early release benefit
> certain felons who used guns during their offenses
> because "the BOP equate[s] gun possession and drug
> dealing with violence." ...  When the Bureau's effort
> to categorically exclude such inmates was frustrated by
> courts of appeals that invalidated its approach, the
> Bureau amended its regulation so as to achieve the same
> result through a method that would cure the problems
> identified by those courts.  In sum, the public safety
> rationale justifying the categorical exclusion of
> inmates whose current offense is a felony that involved
> the carrying, possession, or use of a firearm or other
> dangerous weapon or explosive was not a "post hoc"
> rationalization, but was evident in the litigation that
> prompted the amendment to 28 C.F.R. 550.58 (1995) and
> which the Bureau referenced in the Federal Register.

Muolo, 2009 WL 82491, *9 (citations omitted).  This Court agrees

with Judge Baxter's further reflection that the Bureau's public

safety rationale can be reasonably discerned from the other

categorical exclusions contained in the same regulation,

including discretionary exclusions of: "(1) inmates who have a

prior felony or misdemeanor conviction for homicide, forcible

rape, robbery, or aggravated assault, or child sexual abuse

offenses; (2) inmates whose current offense is a felony that has

as an element the actual, attempted, or threatened use of

physical force against the person or property of another;

(3) inmates whose current offense is a felony that by its nature

or conduct presented a serious potential risk of physical force

against the person or property of another; and, (4) inmates whose

current offense is a felony that by its nature or conduct

involves sexual abuse offenses committed upon children.  28

U.S.C. § 50.58(a)(1)(iv), (vi)(A), (C)-(D).  Muolo, 2009 WL

14

82491, *10.  Finally, this Court agrees that it is telling that none of the 150 commenters to the proposed rule challenged the rule on the basis that there was no public safety rationale to support the categorical exclusions contained in the rule.  <u>Id.</u> Thus, the rationale for the categorical exclusion of inmates whose current offense involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives can be reasonably discerned from the administrative record and is not "arbitrary or capricious."

Petitioner is not entitled to relief on this claim.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed with prejudice.  An appropriate order follows.

<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated: <u>February 23, 2009</u>